CENTER FOR DISABILITY ACCESS
Ray Ballister Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Samuel Love**,<br><br>     Plaintiff,<br><br>v.<br><br>**RJR Properties,** a General Partnership;<br>**Nemo's & Jack's Discount Tire & Wheel, Inc.,** a California Corporation; and Does 1-10,<br><br>     Defendants. | **Case: 5:15-CV-00001-DSF-DTB**<br><br>**First Amended Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Samuel Love complains of Defendants RJR Properties, a General Partnership; Nemo's & Jack's Discount Tire & Wheel, Inc., a California Corporation; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is substantially limited in his ability to walk. He is a paraplegic who uses a wheelchair for mobility.

2.  Defendants are, or were at the time of the incidents, the real property owners, business operators, lessors and/or lessees for Nemo and Jack's Discount Tire store ("Store") located at or about 280 S. Arrowhead Avenue, San Bernardino, California.

3.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

5.  Pursuant to pendant jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

7. The Plaintiff went to Store in December of 2014 to shop.

8. The Store is a facility open to the public, a place of public accommodation, and a business establishment.

9. Parking spaces are one of the facilities, privileges and advantages offered by defendants to their customers at the Store.

10. Unfortunately, although parking spaces are one of the facilities available to patrons of the Store, there were no compliant parking spaces available for persons with disabilities. Instead, there was a parking space reserved for persons with disabilities but the access aisle was too small. The dimensions of the parking space were not compliant with the law. The parking space was 108 inches in width while the access aisle was just 48 inches in width. The plaintiff, who drives a van, needs an access aisle that is 8 feet wide.

11. Plaintiff alleges that there used to be a van-accessible parking space in the lot for persons with disabilities. Unfortunately, the parking space has been allowed to fade or get paved over. Because of defendants' lack of maintenance and care, the accessible parking space designed for use by persons with disabilities is no longer available.

12. Defendants have no policy or procedure in place to make sure that the accessible parking spaces remain useable in the parking lot. As such, the parking space reserved for persons with disabilities is no longer suitable for use by plaintiff.

13. In addition to having no van-accessible parking, the parking lot suffers from a number of inaccessibility issues.

14. The parking stall and access aisles for use by persons with disabilities are not level with each other because of inaccessible slopes that range from 2.4% to 3.4% in the access aisle and 2.7% to 3.4% in the parking space.

These slopes are inaccessible and are not compliant with the law.

15. The required "Minimum Fine $250" sign does not exist. The required tow-away signage near the entrance of the parking lot does not exist in this lot. There is no "No Parking" warning in the access aisle. Non-disabled persons can park in the supposedly handicap parking space or access aisle with impunity.

16. The plaintiff personally encountered this problem. This inaccessible condition denied the plaintiff full and equal access and caused him difficulty and frustration.

17. Paths of travel are one of the facilities, privileges and advantages offered by defendants to their customers at the Store.

18. Plaintiff, although he did not personally confront the barrier, because he was unable to park his vehicle, alleges that the path of travel from the parking lot to the two entrances requires a person to navigate steps for which there are no ramps.

19. Additionally, there is a raised threshold at the entrance door that measures 1.5 inches in height and is greater than the 3/4 inches permitted for exterior sliding doors or the 1/2 inch permitted for every other type of door.

20. Inside the Store, meanwhile, the transaction counters do not provide a lowered, 36 inch portion of counter for use by persons in wheelchairs. Instead, both transaction counters are in excess of 36 inches in height.

21. Restrooms are one of the facilities, privileges and advantages offered by defendants to their customers at the Store.

22. Plaintiff alleges that the restroom doorway clear passage width was 28 inches and inaccessible to wheelchair users.

23. Plaintiff alleges that the restroom mirror is mounted on the wall so that its bottom edge is approximately 49 inches above the floor and is not

effectively used by wheelchair users.

24. The restroom provides a toilet. However, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, plaintiff alleges that there are no grab bars.

25. There are wall mounted accessories and equipment in the restroom including a paper towel dispenser. Plaintiff alleges that the dispenser is mounted so that its highest operable parts are greater than 54 inches above the finished floor and inaccessible to wheelchair users.

26. The plumbing underneath the sink is not wrapped to protect against burning contact.

27. The restroom does not provide a 60 inch diameter turning radius.

28. The height of the water closet (toilet), when measured to the top of the toilet seat is about 16 inches, which is lower than that allowed by law.

29. Finally, the restroom sink is mounted such that the counter or rim is about 37 inches above the finish floor.

30. Plaintiff would like to return and patronize the Store but will be deterred from visiting until the defendants cure the violation. Plaintiff lives in Riverside County but often travels into San Bernardino County. Plaintiff shops in the County on a regular basis.

31. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

32. Given the obvious and blatant violations, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191

(9th Cir. 2007) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

33. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiffs and against all defendants (42 U.S.C. section 12101, et seq.)

34. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

35. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

> a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

    b.  A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

    c.  A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

36. Any business that provides parking spaces must provide handicap parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those handicap parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

37. Here, the lack of a compliant, accessible parking space is a violation of the law.

38. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method and color of marking are to be addressed by State or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and

visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id*. It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id*. Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id*. An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id*. Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id*. Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id*. And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id*. Here, there was no "NO PARKING" lettering, no fine language, no tow-away sign near the entrance of the parking lot and the parking simply failed to comply.

39. Under the 1991 Standards, parking spaces and access aisles must be level with surface slopes not exceeding 1:50 (2%) in all directions. 1991 Standards § 4.6.2. Here, the access aisle and parking space are not level and exceed 2%. Under the 2010 Standards, access aisles shall be at the same level as the parking spaces they serve. Changes in level are not permitted. 2010 Standards502.4. "Access aisle are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles." 2010 Standards § 502.4 Advisory. Specifically, built up curb ramps are not permitted to project into access aisles and parking spaces. Id. No more than a

1:48 slope is permitted. 2010 Standards § 502.4. Here the failure to provide level parking is a violation of the law.

40. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id.* 2010 Standards § 303.4.

41. Here, the unramped steps are a violation of the ADA.

42. Thresholds at doorways cannot exceed 3/4 inches for exterior sliding doors and 1/2 for all other doors. 1991 Standards § 4.13.8; 2010 Standards § 404.2.5. Here, the threshold at the entrance measures 1.5 inches in height, which is a violation of the law.

43. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

44. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

45. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

46. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

47. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

48. Here, the failure to provide compliant grab bars is a violation.

49. If controls, dispensers, receptacles or other equipment is provided in a

restroom, they must be on an accessible route and be mounted so that their highest operable parts are no greater than 54 inches above the floor. 1991 Standards § 4.22.7; 4.27.

50. Here, the failure to ensure that the wall mounted accessories met the height requirement is a violation of the ADA.

51. Hot water and drain pipes under lavatories must be insulated or otherwise configured to protect against contact. 1991 Standards § 4.19.4; 2010 Standards §606.5.

52. Here, the failure to wrap the plumbing underneath the sink is a violation of the ADA.

53. In order for a bathroom to be considered accessible, it must provide unobstructed 60 inches in diameter of turning space. 1991 Standards § 4.23.3; 4.2.3; 2010 Standards § 603.2.1; 304.3.1.

54. Here, there is no such turning radius and the restroom is not accessible.

55. The height of water closets (toilets) must be from 17 inches to 19 inches, measured to the top of the toilet seat.

56. Here the toilet seat is too low and does not comply with the ADA.

57. Sinks must be mounted so that the counter or rim is no higher than 34 inches above the finish floor. 1991 Standards § 4.24.2; 2010 Standards § 606.3. Here, the sink is mounted higher than that allowed by law.

58. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

59. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

60. Given its location and options, the Store is a business that the plaintiff will continue to desire to patronize but he has been and will continue to be

discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiffs and against all defendants) (Cal Civ § 51-53)

61. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

62. Because the defendants violated the plaintiffs' rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

63. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiffs, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiffs are not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

First Amended Complaint        5:15-CV-00001-DSF-DTB

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: March 18, 2015         CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff